325 So.2d 513

**Cleveland CANADA, alias**

**v.**

**STATE.**

**5 Div. 295.**

Court of Criminal Appeals of Alabama.

Aug. 19, 1975.

Rehearing Denied Oct. 1, 1975.

Guy F. Gunter, III, Opelika, for appellant.

William J. Baxley, Atty. Gen., and Carol Jean Smith, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

Larceny; 10 years.

Appellant was charged with feloniously taking $1,000.00, the personal property of the City of Auburn.

Before a jury was empaneled, appellant's appointed counsel filed a motion to suppress which alleged statements obtained from appellant were involuntary. At the hearing the following evidence was presented.

Clinton Canada, Jr., a trusty in Auburn City Jail, testified that in October, 1974, he was serving a 30-day sentence on a conviction of driving while intoxicated and around the middle of that month, Lt. Elder came to see him. Appellant was asked if he knew anything about the money missing from the Recorder Clerk's Office, which was located in the same building adjacent to the cell block. The conversation lasted about five or ten minutes but appellant was never advised of his rights.

Later the same morning, Canada was advised of his constitutional rights by Detective Rothwein and was questioned for about thirty minutes by Rothwein and Officer Sims. During the questioning appellant requested a lie detector test and was taken by these officers to Montgomery where the examination was conducted.

Appellant was told the results of the test indicated he had not taken the money but knew something about it. Returning to Auburn, appellant was again questioned for a short period before he was taken to his cell. About "first dark" the questioning resumed and continued for five hours except for three fifteen-minute breaks. During one break, appellant drank a coke. Although no promises were made, appellant stated he was threatened with imprisonment by Detective Rothwein.

The following morning around 9:00 A. M., Canada was again advised of his constitutional rights and he subsequently made a statement which was reduced to writing, signed by him, and witnessed by Officers Murphy and Gosdin. Although he stated he could not read and write, Canada assumed it was a confession and contended Officer Murphy had promised him a lighter sentence. Appellant explained he had signed the statement "Cleveland Canada" rather than "Clinton Canada, Jr." because at the time of his arrest he was using the driver's license of his brother, Cleveland Canada.

Officer Murphy testified that before Canada signed a waiver of his constitutional rights, appellant stated he had a sixth grade education, could read and write and understood his rights. Murphy also denied making any promises to appellant.

Sergeant Gosdin's testimony was substantially the same as Officer Murphy's, including the fact that no promises were made.

Following Sergeant Gosdin's testimony, the court overruled the motion and held appellant's statement voluntary.

After a jury was empaneled this testimony was presented by the State:

June Sistrunk, clerk of the Auburn City Recorder's Court, testified that it was part of her duties to collect fines and court costs. At the end of each day these monies were placed in a metal cash box and locked in the office filing cabinet. This procedure was followed each day and on the morning of October 15, 1974, when she came to work, she noticed the filing cabinet drawer was closed but unlocked. Upon opening the cabinet, she discovered the cash box was missing and calculated the loss to be about $1,400.00, of which $1,000.00 was in cash.

She recalled that on several occasions appellant was present when the money was visible, and that he was present on the morning prior to the loss.

Mrs. Sistrunk testified she had the only key to the cabinet and although she could not swear it was locked on the day preceding the burglary, she customarily locked it. Also, it would not have been possible for anyone to take the money during business hours.

Sergeant Murphy's testimony followed that presented during the suppression hearing but with these additions:

He identified the waiver form and appellant's two-page statement. Murphy explained the oral statement was reduced to writing and read to appellant. After reading the statement, appellant told Murphy that was the way he wanted it.

In the statement, appellant related he had agreed to help Tommie Myers take the money from the clerk's office and that afterwards the two would meet and divide the money. On October 14th appellant informed Myers by telephone that the cabinet was unlocked and everybody would be asleep about 4:00 A.M. On October 15th at 4:00 A.M., appellant called and Myers came to the police department. They went to the cabinet, Myers took the cash box and appellant returned to his cell.

Sergeant Murphy stated he and Gosdin's over-all contact with appellant encompassed an hour and fifty minutes, during which time appellant was driven to a place where he said the money was supposedly hidden. No money was found. Appellant told Murphy he did not commit the offense but knew who did.

Officer Gosdin substantiated Sergeant Murphy's testimony.

The only witness presented by the defense was Henry James Hill who admitted committing the alleged burglary.

Hill explained that one morning on his way to work, he stopped by the jail and found the clerk's office unattended. After discovering the cabinet drawer open, he took the little tin box and left. He then walked out of the building to the Birmingham News stand, and hid the box in a nearby trash barrel after taking $150.00. When he returned the following day, the box was gone.

Hill admitted that he had served a three-year sentence for burglary; that he had told Officer Murphy about his involvement in the clerk's office burglary, after being charged with two other burglaries and that he was in the Auburn City Jail at approximately the same time Canada was serving the 30-day sentence for driving while intoxicated. Hill denied seeing appellant either at the Auburn City Jail or the Lee County Jail.

Before completing his testimony, Hill exclaimed, ". . . Cleveland Canada wasn't nowhere around and I went in the Police Station and I did it all by myself."

## I

Appellant contends the court was in error when prior to trial it overruled his motion to produce the record and results of the lie detector test. Counsel argues this information was essential to prove appellant's confession was obtained by subterfuge, thereby rendering it involuntary.

In our judgment the sole question raised is whether a confession obtained through trickery is voluntary.

This question was answered in the affirmative by the Supreme Court of Pennsylvania in this manner:

"A confession, procured by a trick or artifice, not calculated to produce an untruth, is never vitiated thereby." *Commonwealth v. Hipple*, 333 Pa. 33, 3 A.2d 353.

In the present case the remarks by the police concerning appellant's polygraph test could not be said to have a likelihood of producing a false confession, and the mere fact a lie detector examination was involved in procuring the confession would not render it involuntary. *United States v. McDevitt*, 6 Cir., 328 F.2d 282; *Johnson v. State*, Fla.App., 166 So.2d 798; *Commonwealth v. Baity*, 428 Pa. 306, 237 A.2d 172.

## II

Next appellant complains the trial court committed reversible error in overruling appellant's motion to suppress certain statements obtained from him.

We have reviewed the evidence of the suppression hearing with special attention regarding threats, promises, periods of questioning and appellant's educational background and find the confession was voluntary. *Botsford v. State*, 54 Ala.App. 482, 309 So.2d 835.

## III

In closing argument, the District Attorney made the following comments which appellant asserts were improper and cause to reverse:

" '—[W]e're concerned with this defendant today who came over to the City of Auburn and used his brother's, who's in the penitentiary's, driver's license so he could get around town. He didn't have one of his own and he wanted to drive and he didn't want to get caught without a license so he assumed the name of his brother, Cleveland Canada, who is in the penitentiary—.' "

.    .    .    .    .    .

" '—[H]e [Henry James Hill] had been over in the Auburn Police Department, which he doesn't remember seeing Cleveland Canada there; he had been down here in the Lee County Jail, and of course he doesn't remember seeing Cleveland Canada there. He's known him all his life. He just doesn't remember seeing him down there.

"I suggest to you, ladies and gentlemen, that if you have ever seen the City of Auburn Jail and the Lee County Jail, it is pretty hard not to know who is in there, especially if it is someone you have known all you life—.' "

At the outset we note that after appellant's objection, the remarks concerning Henry James Hill were subsequently withdrawn, and the defense did not insist that the court rule on his objection.

In the absence of an adverse ruling, this court has nothing to review. *Frazier v. State*, 53 Ala.App. 492, 301 So.2d 256.

As to the other remarks, we are unable to find error in the court's ruling. They were supported by the evidence and subject to the inferences drawn. *Edson v. State*, 53 Ala.App. 460, 301 So.2d 226.

No error is revealed in the record.

Affirmed.

All the Judges concur except CATES, P. J., not sitting.